# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| PEM-AIR TURBINE ENGINE SERVICES LLC, a Florida limited liability company, §§§§§§§§§§§ Plaintiff, v. NAVYUG GUPTA, a Texas individual; and PRENEET HOLDINGS INC., a Texas corporation, Defendants. | CIVIL NO. 3:21-cv-180 |

## COMPLAINT

Plaintiff, PEM-AIR TURBINE ENGINE SERVICES LLC ("PATES"), by and through undersigned counsel, hereby sues the Defendants, NAVYUG GUPTA ("Mr. Gupta") and PRENEET HOLDINGS INC. ("Preneet"), and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.  This is an action for breach of contract, breach of warranty express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraud, and unjust enrichment.

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds Seventy-Five Thousand and 00/100 Dollars ($75,000.00) and is between citizens of different states.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Northern District of Texas.

4.  At all material times hereto, PATES is and was a Florida limited liability company with its principal place of business in Florida.

5. At all material times hereto, Mr. Gupta is and was a resident of the state of Texas.

6. At all material times hereto, Preneet is and was a Texas corporation with its principal place of business located at 719 E Grauwyler Rd, Apt. 104, Irving, Texas 75061. Upon information and belief, Mr. Gupta is the sole member of Preneet.

## GENERAL ALLEGATIONS

**a. PATES purchases an aircraft to remove its engines.**

7. PATES offers services relating to the maintenance and sale of aircraft engines.

8. On February 28, 2020, PATES purchased an aircraft in the United Kingdom ("Aircraft") and sought to remove its CF6-80A engines ("Engines).

9. To complete this project, PATES hired eCube Solutions Ltd. ("eCube"), a company located in the United Kingdom that specializes in recycling aircraft parts.

10. Prior to removal of the Engines, PATES required the use of a bootstrap kit and engine stands.

11. The bootstrap kit would enable PATES to remove the Engines from the aircraft.

12. Engine stands are required for proper engine placement when an engine is no longer "on wing."

13. If an aircraft engine is not removed with a proper bootstrap kit and placed on the correct engine stand, the engine could sustain damage and maintenance workers could sustain injuries.

14. Storage charges accrued for each day the Aircraft remained in the United Kingdom, which PATES was liable to pay.

  **b.** **The search for and identification of a source for a bootstrap kit and engine stands.**

  15. In or around March 2020, PATES and eCube searched for CF6-80A engine stands and a bootstrap kit.

  16. On or about March 3, 2020, Gene Mashlan, a representative from eCube, contacted Alem Soler from GSEbay.com ("GSEbay") about CF6-80A engine stands and bootstrap kits that it was marketing for a corporate seller named Preneet.

  17. GSEbay is a distributor that helps manufacturers and owners of aviation ground support equipment sell their products, including engine stands and bootstrap kits.

  18. On April 23, 2020, PATES contacted GSEbay about purchasing two CF6-80A engine stands and leasing one CF6-80A bootstrap kit, including all items and materials for use with the engine stands and bootstrap kit (the "Materials").

  19. The following day, GSEbay provided PATES with a quote from Preneet offering a price of $16,500.00 per CF6-80A engine stand, $6,000.00 to lease a CF6-80A bootstrap kit for 30 days (which did not include any dynamometer),[1] and a $10,000.00 returnable deposit for a total of $49,000.00. (the "Quote"). A true and correct copy of the Quote is attached hereto as Exhibit "A".

  20. On April 24, 2020, PATES sent a purchase order that totaled $49,000.00 to Preneet for the Materials (the "Purchase Order"). A true and correct copy of the Purchase Order is attached hereto as Exhibit "B".

  21. PATES advised GSEbay that this order was time sensitive and it needed to complete the transaction as soon as possible.

---

[1] Dynamometers are devices used for testing applications in engines, including torque and rotational speed.

22. Gupta responded to PATES, representing that Preneet will expedite the process by having the Materials acquired for shipment on May 1, 2020.

23. Preneet contracted with third party MTS Ground Support Equipment, LLC ("MTS GSE") to supply the Materials at its location in Arkansas; however, Preneet remained responsible for timely delivering the conforming Materials to PATES.

24. On April 27, 2020, GSEbay provided PATES with an invoice from Preneet for the Materials (the "Invoice"). A true and correct copy of the Invoice is attached hereto as Exhibit "C".

25. The Invoice warranted that Preneet would deliver to PATES two "High Quality" engines stands that are "bootstrap capable" and "complete". *See* Exhibit "C".

26. The Invoice identified that Preneet had the Materials located in Springdale, Arkansas, the address for MTS GSE. *See* Exhibit "C".

27. On April 27, 2020, Gupta further induced PATES to enter into the transaction when he represented that he could cause expedited delivery of the Materials by shipping them from Arkansas instead of shipping them from the European Union.

28. Gupta advised PATES that the earliest Preneet could ship material from the European Union would be May 11, 2020 because of the COVID-19 pandemic.

29. On April 29, 2020, relying upon Gupta's representations, PATES paid the Invoice.

30. That same day, PATES asked Gupta to confirm when the Materials would be ready for pick up.

31. Gupta represented he was working on having the Materials available for pick up on May 1, 2020.

### c. PATES coordinates shipment of the bootstrap kit and engine stands.

32. In reliance on Gupta's representations, PATES coordinated with Elle Logistics, Inc. ("Elle") to pick up the Materials from MTS GSE on May 1, 2020 for shipment to the United Kingdom.

33. On April 30, 2020, Elle advised PATES that MTS GSE would not have the Materials ready for shipment until May 5, 2020.

34. PATES immediately sought confirmation from Gupta as to whether the Materials would be available by May 1, 2020.

35. Gupta responded that the Materials would not be ready by May 1, 2020 because he needed to use a specific type of truck to deliver the Materials.

36. On May 4, 2020, PATES learned from MTS GSE that the Materials now would not be available for pick up until May 8, 2020.

37. PATES contacted Gupta demanding an explanation for the delay.

38. Gupta responded that the dynamometers on the bootstrap kit did not pass quality assurance, so the factory ordered new ones that would not arrive until May 7, 2020.

39. PATES advised Gupta that it did not need any dynamometers as reflected in the Quote.

40. Nonetheless, Gupta refused to deliver the bootstrap kit without a dynamometer and represented that the bootstrap kit "will be complete."

41. On May 7, 2020, Elle advised PATES that MTS GSE would have the bootstrap kit parts it was waiting for later that day, it would take all of May 8, 2020 to assemble parts, and that pick up for the Materials would not occur until May 11, 2020.

    **d.    Preneet ships the Materials without critical components rendering them unusable.**

42. Elle picked up the Materials from MTS GSE on May 11, 2020 and delivered it to eCube in the United Kingdom on or about May 18, 2020.

43. However, Preneet and Gupta failed to cause a shipment of all Materials delivered to eCube.

44. On May 18, 2020, Mashlan notified PATES that the delivered Materials included two incomplete engine stands, thus rendering them unusable.

45. That same day, PATES and Mashlan contacted Gupta requesting that he immediately send the missing components for the engine stands.

46. On May 19, 2020, Mashlan advised Gupta that Preneet also failed to include all components for the bootstrap kit.

47. Without all the components for the engine stands and bootstrap kit (the "Missing Materials"), eCube could not remove the Engines.

48. Storage charges for the Aircraft continued to accrue while eCube awaited the Missing Materials.

    **e.    Gupta contrives excuses to conceal his fraud.**

49. On May 19, 2020, Gupta responded that he was preparing the missing components for the engine stands and that will provide an update regarding the bootstrap kit parts.

50. On May 21, 2020, Gupta advised PATES and Mashlan that he was shipping the Missing Materials later that afternoon.

51. However, Preneet did not ship the Missing Materials to PATES on that day.

52. On May 23, 2020, Gupta advised PATES and Mashlan that DHL picked up the Missing Materials for delivery to the United Kingdom.

53. From May 21 to 26, 2020, Mashlan made multiple attempts to obtain the shipping information for the Missing Materials from Gupta to no avail.

54. On May 27, 2020, Gupta represented to PATES and Mashlan that DHL returned the Missing Materials to their original location because all the individual pieces inside the shipping box needed to be separately wrapped in sealed bags and treated with ultraviolet light.

55. On May 28, 2020, Gupta represented to PATES and Mashlan that the Missing Materials would again be shipped with DHL that afternoon.

56. From May 31 to June 5, 2020, Mashlan repeatedly requested the shipping information for the Missing Materials from Gupta.

### f. **PATES learns that it was defrauded by Gupta through Preneet.**

57. Preneet never had the Materials PATES paid for, as set forth in the Invoice.

58. Gupta never provided the shipping information for the Missing Materials.

59. Preneet never shipped the Missing Materials to the United Kingdom.

60. The incomplete Materials that Preneet delivered did not contain the correct bootstrap kit or engine stands for CF6-80A engines.

61. The delivered Materials were built with shoddy craftmanship that could have damaged the Engines or caused injury to a maintenance worker.

62. Preneet failed to ship the Materials paid for by PATES, thereby breaching their agreement.

63. Preneet's conduct established that it was incapable of curing the deficiencies in its deliveries.

64. PATES rejected Preneet's nonconforming goods and demanded a refund of its Invoice payment; however, Preneet refused to refund PATES's money.

65. As a result of Mr. Gupta's and Preneet's actions, PATES has incurred the following damages exceeding $75,000.00: 1) the purchase price of the non-conforming goods; 2) the shipping charges for the non-conforming goods; 3) monies paid to third-party maintenance providers, including eCube, as a result of Defendants' delayed shipments and delivery of non-conforming goods; 4) payment to third-parties for engine stands and a bootstrap kit; and 5) storage costs for PATES's aircraft incurred as a result of Defendants' delayed shipments and delivery of non-conforming goods.

## COUNT I
## BREACH OF CONTRACT AGAINST PRENEET

66. PATES incorporates and re-alleges paragraphs 1-65 as if fully set forth herein.

67. PATES and Preneet entered into a valid contract for the sale of the Materials, including expediting shipment of the Materials from MTS GSE to the United Kingdom.

68. Preneet breached its obligations under the agreement by, among other things, failing to deliver the Materials with the proper dimensions and equipment.

69. Preneet further breached the parties' contract by delaying its delivery of the Materials and never shipping the Missing Materials, which caused PATES to incur additional costs and charges.

70. PATES performed all of its obligations under the contract.

71. As a proximate result of Preneet's breaches, PATES has incurred compensable damages exceeding $75,000.00, which shall be established by evidence at trial.

72. Pursuant to Texas Civil Practices and Remedies Code § 38.001, PATES seeks to recover all reasonable and necessary costs and attorneys' fees incurred in bringing this breach of contract claim.

WHEREFORE, PATES respectfully requests that this Court enter a judgment in its favor against Prennet for an amount to be determined at trial, plus interest, costs, attorneys' fees, and such other relief as this Court deems just equitable, and proper.

## COUNT II
## BREACH OF EXPRESS WARRANTY
(AGAINST PRENEET)

73. PATES incorporates and re-alleges paragraphs 1-65 as if fully set forth herein.

74. PATES and Preneet entered into a valid contract for the sale of the Materials, including expediting shipment of the Materials from MTS GSE to the United Kingdom.

75. Preneet expressly stated in the Invoice that its engine stands would be "High Quality" and "complete" for CF6-80A engines.

76. On May 4, 2020, Mr. Gupta expressly stated that the bootstrap kit included in the Invoice would be "complete".

77. Preneet's warranties were part of the basis of PATES' bargain with Preneet.

78. PATES relied upon Preneet's warranties when it purchased the Materials.

79. The Materials that Preneet caused to be delivered to PATES were not complete, fully functional, of high quality, or compliant with CF6-80A engines.

80. PATES timely notified Preneet that the Material did not conform to the specifications in the parties' agreement.

81. As a proximate result of Preneet's breach of express warranty under Article 2-313 of the Uniform Commercial Code (the "UCC"), Preneet has incurred compensable damages exceeding $75,000.00, which will be established by evidence at trial.

WHEREFORE, PATES respectfully requests that this Court enter a judgment in its favor against PATES for an amount to be determined at trial, plus interest, costs, attorneys' fees, and such other relief as this Court deems just equitable, and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(AGAINST PRENEET)

82. PATES incorporates and re-alleges paragraphs 1-65 as if fully set forth herein.

83. PATES and Preneet entered into a valid contract for the sale of the Materials, including expediting shipment of the Materials from MTS GSE to the United Kingdom.

84. Preneet is a merchant of aviation ground support equipment, including engine stands and bootstrap kits.

85. Pursuant to Article 2-314 of the UCC, Preneet provided an implied warranty that the Materials would be merchantable.

86. The Materials Preneet delivered to PATES were not fit for the ordinary purpose for which such goods are used, which PATES timely objected about to Preneet.

87. Consequentially, Preneet violated the implied warranty of merchantability under the UCC.

88. As a proximate result of Preneet's breach of the implied warranty of merchantability, PATES has incurred compensable damages exceeding $75,000.00, which will be established by evidence at trial.

WHEREFORE, PATES respectfully requests that this Court enter a judgment in its favor against Preneet for an amount to be determined at trial, plus interest, costs, attorneys' fees, and such other relief as this Court deems just equitable, and proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE
(AGAINST PRENEET)

89. PATES incorporates and re-alleges paragraphs 1-65 as if fully set forth herein.

90. PATES and Preneet entered into a valid contract for the sale of the Materials, including expediting shipment of the Materials from MTS GSE to the United Kingdom.

91. Preneet had reason to know that PATES was purchasing the Materials for the specific purpose of removing CF6-80A engines.

92. Preneet had reason to know that PATES was relying upon Preneet's judgment as a merchant of aviation ground support equipment to select complete engine stands and bootstrap kit instruments that would be suitable for PATES' stated purposes.

93. The Materials Preneet delivered to PATES were not suitable for PATES' stated purposes.

94. PATES timely notified Preneet that the delivered Materials did not conform to the specifications in the parties' agreement.

95. As a proximate result of Preneet's breach of the implied warranty of fitness for a particular purpose, PATES has incurred compensable damages exceeding $75,000.00, which will be established by evidence at trial.

WHEREFORE, PATES respectfully requests that this Court enter a judgment in its favor against Preneet for an amount to be determined at trial, plus interest, costs, attorneys' fees, and such other relief as this Court deems just equitable, and proper.

## COUNT V
## FRAUD
(AGAINST PRENEET AND GUPTA)

96. PATES incorporates and re-alleges paragraphs 1-65 as if fully set forth herein.

97. Mr. Gupta made statements of material fact when he represented to PATES that Preneet was expediting the shipment of the Materials because shipment from the European Union would be delayed until May 11, 2020.

98. However, Preneet failed to cause the Materials to be available for shipment until May 11, 2020 despite Mr. Gupta's representations.

99. Notably, each time there was a delay in pick up for the Materials, PATES learned it from Elle or MTSE GSE—not from Gupta or Preneet.

100. Gupta attributed the delay to occurrences that were untrue, which he ultimately conveyed to PATES.

101. But, Gupta knew or should have known that his statements were false at the time he made them.

102. After Preneet delivered the incomplete Materials, Gupta made statements of material fact relating to shipping the Missing Materials that he knew or should have known at the time he made them.

103. Gupta represented he was preparing to ship the Missing Materials to PATES, but he never provided any shipping information despite multiple requests.

104. Gupta intended for PATES to rely upon his representations.

105. PATES did in fact rely upon his representations when it paid Preneet and waited for the Materials and Missing Materials to arrive while accruing storage charges.

106. However, Preneet never shipped the correct Materials or Missing Materials to PATES.

107. As a proximate result of Preneet's fraud, PATES has incurred compensable damages exceeding $75,000.00, which will be established by evidence at trial.

WHEREFORE, PATES respectfully requests that this Court enter a judgment in its favor against Preneet for an amount to be determined at trial, plus interest, costs, attorneys' fees, and such other relief as this Court deems just equitable, and proper.

## COUNT VI
## UNJUST ENRICHMENT (IN THE ALTERNATIVE)
(AGAINST PRENEET)

108. PATES incorporates and re-alleges paragraphs 1-65 as if fully set forth herein.

109. PATES conferred a benefit upon Preneet by paying it for the Materials.

110. Preneet retained this benefit when it accepted payment on the Invoice from PATES.

111. Preneet was unjustly enriched to PATES' detriment when Preneet improperly delayed shipment of the Materials, provided incomplete Materials, and never shipped the Missing Materials.

112. It would be unjust to allow Preneet to retain PATES' payment because it accepted payment for Materials that it never provided.

WHEREFORE, PATES respectfully requests that this Court enter a judgment in its favor against Preneet for an amount to be determined at trial, plus interest, costs, attorneys' fees, and such other relief as this Court deems just equitable, and proper.

Dated: January 27, 2021

Respectfully submitted,

*/s/ Kristin Newman*
Geffrey W. Anderson
SBN: 00786980
Kristin Newman
SBN: 24102279
ANDERSON & RIDDLE, LLP
1604 8th Avenue
Fort Worth, Texas 76104
(817) 334-0059
(817) 334-0425 Fax
ganderson@andersonriddle.com
knewman@andersonriddle.com

**ATTORNEYS FOR PEM-AIR TURBINE ENGINE SERVICES, LLC.**