IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PEM-AIR TURBINE ENGINE SERVICES, LLC,** § § § | | |
| Plaintiff, § § | | |
| v. § § | | Civil Action No. **3:21-CV-00180-L** |
| **NAVYUG GUPTA and PRENEET HOLDINGS, INC.,** § § § § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Preneet Holdings, Inc.'s Motion to Dismiss and Brief in Support Thereof (Doc. 10), filed on March 1, 2021. After careful consideration of the motion and brief, response brief, record, and applicable law, the court **denies** Defendant's Motion to Dismiss (Doc. 10).

**I.     Factual and Procedural Background**

On January 27, 2021, Plaintiff Pem-Air Turbine Engine Services, LLC ("Plaintiff" or "Pem-Air"), filed its Complaint (Doc. 1) in this action against Defendants Navyug Gupta ("Defendant" or "Mr. Gupta") and Preneet Holdings, Inc. ("Preneet") (collectively, "Defendants"). This case arises out of Preneet's alleged breach of a contract it entered into with Pem-Air and alleged fraud committed by Preneet and Mr. Gupta related to the fulfillment of that contract. Accordingly, Plaintiff asserts six claims against Defendants:

1. Breach of Contract;
2. Breach of Express Warranty;
3. Breach of Implied Warranty of Merchantability;
4. Breach of Implied Warranty of Fitness for a Particular Purpose;

    5. Fraud; and

    6. Unjust Enrichment (in the Alternative).[1]

*See* Pl.'s Compl. 8-13.

The facts as alleged by Pem-Air are as follows: Pem-Air "offers services relating to the maintenance and sale of aircraft engines." *Id.* ¶ 7. It purchased an aircraft in the United Kingdom on February 28, 2020, to remove its engines. *Id.* ¶ 8. To properly remove the engine without damaging it or potentially injuring maintenance workers, Pem-Air needed a bootstrap kit and engine stands. *Id.* ¶ 10-13. Additionally, Plaintiff incurred storage charges each day the aircraft remained in the United Kingdom. *Id.* ¶ 14. Pem-Air entered into negotiations with Preneet to purchase two engine stands and lease a bootstrap kit, including all necessary materials for the specific aircraft engines, for $49,000. *Id.* ¶¶ 18-20. Through a third-party, Plaintiff informed Defendants that "this order was time sensitive and it needed to complete the transaction as soon as possible." *Id.* ¶ 21. Mr. Gupta, Preneet's "sole member," *id.* ¶ 6, responded that the requested materials would be expedited and ready for shipment on May 1, 2020. *Id.* ¶ 22. Accordingly, Pem-Air paid Preneet the quoted and invoiced amount. *Id.* ¶ 29.

Relying on Mr. Gupta's representations, Pem-Air coordinated with another third party to have the materials picked up from an agreed-upon location in Arkansas "on May 1, 2020 for shipment to the United Kingdom." *Id.* ¶¶ 23, 32. Throughout the end of April 2020 and the beginning of May 2020, Defendants delayed shipment of the materials subject to the contract for various reasons without prior notice. *See id.* ¶¶ 33-41. On May 11, 2020, Pem-Air's third-party shipper collected the materials from the predetermined location and delivered it to the aircraft location in the United Kingdom "on or about May 18, 2020;" however, the shipment was

---

[1] Pem-Air asserts each of these claims against Preneet.

incomplete, as components of the engine stands and bootstrap kit were missing. *Id.* ¶¶ 42-44, 46. On May 18, Pem-Air contacted Mr. Gupta "requesting that he immediately send the missing components for the engine stands."[2] *Id.* ¶ 45. Meanwhile, storage charges continued to accrue for storing the aircraft. *Id.* ¶ 48. Between May 19 and May 28, 2020, Mr. Gupta represented to Pem-Air on several occasions that the missing components would be shipped, but he never provided Plaintiff with the requested shipping information. *Id.* ¶¶ 49-56; 58. Plaintiff further alleges that Preneet "never had" and "never shipped" the materials Pem-Air paid for under the contract. *Id.* ¶¶ 57; 59.

In its Motion, Preneet seeks dismissal of Pem-Air's claim against him because, according to him, the Complaint fails to: (1) allege an amount-in-controversy of $75,000, giving the Court subject matter jurisdiction; (2) plead fraud with specificity; (3) state a claim upon which relief can be granted. Pem-Air responds that it "alleged damages that meet the jurisdictional amount, sufficiently alleged the elements of fraud against Preneet, and may plead unjust enrichment in the alternative." Pl.'s Resp. ¶ 5.

## II.     Subject Matter Jurisdiction

### A.     Standard for Diversity Jurisdiction and Amount in Controversy

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of*

---

[2] Plaintiff did not learn of the missing bootstrap components until May 19, 2020. *See* Pl.'s Compl. ¶ 46.

*Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citation omitted). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 n.2 (5th Cir. 1983)).

For diversity purposes, the amount in controversy normally is determined by the amount sought on the face of the plaintiff's pleadings, so long as the plaintiff's claim is made in good faith. 28 U.S.C. § 1446(c)(2); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (citation omitted); *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good

**Memorandum Opinion and Order – Page 4**

faith. To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Reinsurance Co.*, 134 F.3d at 1253 (internal quotation marks and footnotes omitted). The test to be used by the district court is "whether it is more likely than not that the amount of the claim will exceed [the jurisdictional amount]." *Id.* at 1253 n.13. As the Fifth Circuit has stated, "[t]he district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount. If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *Id.* at 1253.

### B.     Analysis

Plaintiff brought this action based on diversity jurisdiction. The parties do not dispute that complete diversity exists. Moreover, the court determines that the pleadings support such a finding. Therefore, it need only consider whether Plaintiff meets the $75,000 amount-in-controversy threshold. In its Complaint, Pem-Air seeks "damages exceeding $75,000" based on:

> 1) the purchase price [$49,000] of the non-conforming goods; 2) the shipping charges for the non-conforming goods; 3) monies paid to third-party maintenance providers . . . as a result of Defendants' delayed shipments and delivery of non-conforming goods; 4) payment to third-parties for engine stands and a bootstrap kit; and 5) storage costs for PATES's aircraft incurred as a result of Defendants' delayed shipments and delivery of non-conforming goods.

Pl.'s Compl. ¶ 65. In determining whether the jurisdictional amount exceeds $75,000, a court may take into account that a party has requested attorney's fees. *Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534, 536 (5th Cir. 1990). While Plaintiff's Complaint does not indicate the monetary amount of damages associated with items 2-5 cited above, it does request attorney's fees. *See* Pl.'s Compl. ¶ 72. Given the causes of action asserted, the complexity of the case, and the request for attorney's fees, based on the court's experience, it is more likely than not that the attorney's fees will greatly exceed $26,000. In other words, it is readily apparent from a common-

sense and reasonable analysis of the allegations in Plaintiff's Complaint that the amount in controversy more likely than not exceeds $75,000. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Thus, even without the specific damages amounts stated with respect to items 2-5, the court has no pause in concluding that Plaintiff has satisfied the amount-in-controversy requirement. As the court determines that it is "facially apparent" from Plaintiff's pleadings that its alleged damages exceed the jurisdictional amount, these good faith allegations are sufficient to satisfy the amount-in-controversy prong of diversity jurisdiction. *See Paul Reinsurance Co.*, 134 F.3d at 1253. The court therefore determines that it has subject matter jurisdiction over Pem-Air's claims against Preneet.

### III. Substantive Claims

#### A. Legal Standards

##### 1. Rule 9(b) – Heightened Standard for Pleading Fraud

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.,* No. 3:10-CV-1747-B, 2011 U.S. Dist. LEXIS 65912, at *7, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the

who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179).

### 2.  Rule 12(b)(6) – Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v.*

**Memorandum Opinion and Order – Page 7**

*Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief

**Memorandum Opinion and Order – Page 8**

can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

      B.      **Analysis**

           1.      **Pleading Fraud with Particularity**

Defendant asserts that Plaintiff's fraud claim "against it should be dismissed for failure to plead with particularity." Def.'s Mot. ¶ 2. Specifically, Preneet contends that "Plaintiff fails to state in its Complaint how it relied on the allegedly fraudulent statements made after execution of the contract, or what injury if any was caused by such reliance, independent of injuries flowing from the alleged breach of contract." *Id.* ¶ 5. Pem-Air responds that this is "false," and asserts that the Complaint "specifically alleges that [it] relied upon Defendants' representations by waiting for Defendants to ship certain materials" and includes "damages due to the delays that Defendants caused." Pl.'s Br. in Supp. ¶ 9. Additionally, it contends that the Complaint "sets forth the 'who, what, when, where, and how' of Preneet's alleged fraud" and "[a]s such, meets the heightened pleading standard." *Id.*

To survive Defendant's motion to dismiss pursuant to Rule 9(b), Plaintiff must allege adequate facts with particularity to support its allegation that Defendant committed fraud. In accordance with Rule 9(b), Plaintiff has pleaded facts with particularity as to "the who, what, when, where, and how" of the alleged fraud. *See Williams*, 112 F.3d at 179. Stated differently, Plaintiff alleges facts with particularity that, through Mr. Gupta, its sole member, Preneet (the "who") made misrepresentations as to the shipment of the contracted materials (the "what") in May of 2020 (the "when") located at the predetermined pick-up location in Arkansas (the "where")

**Memorandum Opinion and Order – Page 9**

by representing that it would ship the contracted materials, although "Preneet never had the Materials [Pem-Air] paid for, as set forth in the Invoice" (the "how"). Pl. Compl. ¶¶ 57; 96-106. The court determines, therefore, that Plaintiff has pleaded facts with adequate particularity to satisfy Rule 9(b). Plaintiff, however, must still satisfy pleading requirements under Rule 12(b)(6).

To state a claim of common law fraud under Texas law, a plaintiff must set forth allegations from which the court can reasonably infer: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Defendant argues that Plaintiff failed to allege facts as to the fifth element of its fraud claim: reliance. The court disagrees, as Plaintiff specifically alleges that it "did in fact rely upon his representations when it paid Preneet and waited for the Materials and Missing Materials to arrive while accruing storage charges." Pl.'s Compl. ¶ 105. The court determines, therefore, that the facts as alleged by Pem-Air in its Complaint are sufficient to support an inference as to each element of this claim.

### 2.     Economic Loss Rule

The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Southwest Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991). The parties dispute whether the economic loss rule applies to Plaintiff's fraud claim. Preneet argues that the economic loss rule applies here and bars Pem-Air's fraud claim because "Plaintiff has not alleged any recoverable injury outside of the economic loss associated

**Memorandum Opinion and Order – Page 10**

with the contract." Def.'s Mot. ¶ 8. Pem-Air responds that the rule does not apply to its fraud claim against Preneet "because the economic loss rule does not apply in fraud cases." Pl.'s Br. in Supp. ¶ 12 (citations omitted). Texas law generally applies the economic loss rule to negligence and strict product liability actions—not tort actions. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011) (citation omitted). Moreover, the Texas Supreme court "has continued to recognize the propriety of fraud claims sounding in tort despite the fact that the aggrieved party's losses were only economic losses." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Among the recognized actions in which plaintiffs have been allowed to cover "economic damages even absent physical injury or property damage" are fraud and fraudulent inducement actions. *City of Alton*, 354 S.W.3d at 418 (citations omitted). Therefore, the court finds that Pem-Air's fraud claim against Preneet is not barred by the economic loss rule.

### 3. Unjust Enrichment

"Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citations omitted). "That is because parties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Id.* (citations omitted). Under Texas law, "unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) (citations omitted).

Pem-Air asserts an alternative unjust enrichment claim against Preneet. Pl.'s Compl. 13. Preneet argues that this claim should be dismissed because "[t]he existence of a contract between the parties forecloses any claim for unjust enrichment." Def.'s Mot. ¶ 9 (citing *Fortune Prod. Co.*,

**Memorandum Opinion and Order – Page 11**

52 S.W.3d at 683). While Pem-Air accepts that unjust enrichment cannot be pleaded when a valid contract exists between the parties, it contends that it should nevertheless be permitted to make such a pleading in the alternative because "Preneet has not stipulated to the validity of any contract." Pl.'s Br. in Supp. ¶ 13. The court agrees. Therefore, it will not dismiss Plaintiff's alternatively pleaded unjust enrichment claim unless or until such time as Defendant makes such a stipulation or a determination that a valid contract exists between the parties is made.

### IV. Conclusion

For the reasons herein stated, the court **determines** that it has subject matter jurisdiction over this matter, as complete diversity exists between the parties and the amount in controversy exceeds $75,000; Plaintiff has properly pleaded its fraud claim against Defendant; and Plaintiff's unjust enrichment claim is properly pleaded in the alternative. Accordingly, the court **denies** Defendant's Motion to Dismiss (Doc. 10).

**It is so ordered** this 22nd day of December, 2021.

Sam A. Lindsay
United States District Judge