IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEM-AIR TURBINE ENGINE SERVICES LLC, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:21-cv-180-L-BN |
| NAYVUG GUPTA AND PRENEET HOLDINGS INC., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 111.

The parties have filed cross-motions for summary judgment. *See* Dkt. No. 35 (Plaintiff's Motion for Summary Judgment); Dkt. No. 59 (Defendants' Motion for Summary Judgment).

The parties have also filed numerous objections challenging one another's summary judgment evidence and briefs.

This order addresses the pending, non-dispositive evidentiary challenges related to the motions for summary judgment.

### Background

The parties are familiar with the factual background of this case, and the Court will not repeat it here. But the procedural background of the evidentiary motions is

-1-

helpful.

There is much overlap between the pending motions for summary judgment. The same is true for the objections to the summary judgment evidence, portions of the summary judgment briefs, and related motions.

I.  Pem-Air's Motion for Summary Judgment

Plaintiff Pem-Air Turbine Engine Services LLC filed a motion for summary judgment on April 26, 2023. *See* Dkt. No. 35. It also filed a supporting brief, *see* Dkt. No. 36, and an appendix of evidence, *see* Dkt. No. 37.

Defendants filed a response. *See* Dkt. No. 52. Pem-Air filed a reply. *See* Dkt. No. 53.

- On June 13, 2023, Defendants filed objections to and a motion to strike Pem-Air' summary judgment evidence [Dkt. No. 37] and statements in its supporting brief [Dkt. No. 36]. *See* Dkt. 49.
  - Pem-Air filed a response. *See* Dkt. No. 54.
  - Defendants did not file a reply.

- On June 27, 2023, Pem-Air filed objections to and a motion to strike statements in Defendant's summary judgment response brief [Dkt. No. 50] and evidence submitted in support of the response [Dkt. No. 51]. *See* Dkt. No. 55.
  - Defendants did not file a response.

II.  Defendants' Motion for Summary Judgment

Defendants filed a motion for summary judgment on July 21, 2023. *See* Dkt. No. 59. They also filed a supporting brief, *see* Dkt. No. 60, and an appendix of evidence, *see* Dkt. No. 61.

Pem-Air filed a response, *see* Dkt. No. 63, and an appendix of evidence, see Dkt. No. 64. Defendants filed a reply, *see* Dkt. No. 71, a supporting brief, *see* Dkt. No. 72, and

an appendix of evidence, *see* Dkt. No. 73.

- On August 11, 2023, Pem-Air filed objections to and a motion to strike Defendants' motion for summary judgment evidence [Dkt. No. 60] and statements in the supporting brief [Dkt. No. 61]. *See* Dkt. No. 65.
    - Defendants filed a response, *see* Dkt. No. 71, supporting brief, *see* Dkt. No. 72, and appendix of evidence, *see* Dkt. No. 73.
    - Pem-Air filed a reply. *See* Dkt. No. 76.

- On August 13, 2023, Defendants filed a motion to amend the Declarations of Navyug Gupta and Mehmet Tumba after Gupta and Tumba were deposed. *See* Dkt. No. 67.
    - Pem-Air filed a response. *See* Dkt. No. 69.
    - Defendants filed a reply. *See* Dkt. No. 78.

- On September 15, 2023, Pem-Air filed objections to and a motion to strike statements in Defendants' reply brief [Dkt. No. 60] and evidence filed in support of the reply brief [Dkt. No. 61]. *See* Dkt. No. 75.
    - Defendants filed a response, *see* Dkt. No. 82, and an appendix of evidence, *see* Dkt. No. 83.
    - Pem-Air filed a reply. *See* Dkt. No. 87.

- And on November 14, 2023, Pem-Air filed a motion for clarification seeking leave to file a sur-reply to Defendants' reply brief. *See* Dkt. No. 89.
    - Defendants filed a response. *See* Dkt. No. 94.
    - Pem-Air filed a reply. *See* Dkt. No. 99.

The Court denies the motion to amend declarations and the motion to strike, and

addresses the many, granular objections, for the reasons explained below.

## Legal Standards and Analysis

"A party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

"As an initial matter," the Court has previously explained,

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). But Rule 12(f) only applies to pleadings as defined by Federal Rule of Civil Procedure

7(a). *See, e.g.*, 5C *Charles Alan Wright et al.,* FED. PRAC. & PROC. 1380 & n.8.5 (3d ed. 2012) ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)"); *Groden v. Allen*, No. 3:03-cv-1685-D, 2009 WL 1437834, at *3 (N.D. Tex. May 22, 2009) (Rule 12(f)"does not permit the Court to strike motions or matters within them because the rule applies only to pleadings"). Outside of Rule 12(f), the Federal Rules of Civil procedure do not otherwise contemplate motions to strike. Further, "[a]s a general matter, motions to strike are disfavored and disserve the interest of judicial economy." *Cooper v. Dallas Police Ass'n,* No. 3:05-cv-1778-N, 2013 WL 1787564, at *6 (N.D. Tex. Apr. 5, 2013) (citing *Murray v. TXU Corp.*, No. 3:03-cv-888-P, 2005 WL 1313412, at *4 (N.D. Tex. May 27, 2005); *United Steel Paper & Forestry v. Graphic Packaging Int'l, Inc,* No. 06-C-1188, 2007 WL 2288069, at *3 (E.D. Wis. Aug. 4, 2007)), *rep. & rec. adopted*, 2013 WL 1787563 (N.D. Tex. Apr. 26, 2013).

*Human Ins. Co. v. Tenet Health Sys.*, No. 3:16-cv-2919-B, 2016 WL 6893629, at *32 (N.D. Tex. Nov. 21, 2016) (citation to docket in case omitted).

Most of the evidentiary motions are titled "objections to and motions to strike" the opponent's summary judgment evidence and statements in their briefs.

But a motion to strike is not necessary to challenge summary judgment evidence. Courts consider objections to evidence offered in support of or in opposition to motions for summary judgment in conjunction with the actual motion for summary judgment as opposed to a separate motion to strike, similar to the practice of objecting to evidentiary offerings at trial. *See Adams v. Untied Assoc. of Journeymen & Apprentices of the Plumbing and Pipefitting Indus. of the U.S. & Canada, AFL-CIO, Local 198,* Civil Action No. 98-400-JWD-RLB, 2020 WL 1856191, at * (M.D. La. Apr. 13, 2020) (citations omitted).

And, so, the Court will consider the motions to strike as raising objections only.

I.      Objections to summary judgment evidence

      A.      Objections to documentary evidence

           1.      Authentication Objections [Dkt. No. 49]

Defendants object to the documentary evidence (Exhibits C-T) submitted in support of Plaintiff's motion for summary judgment [Dkt. No. 37 at 17-110; Dkt. No. 72 at 12-13], which consist of email correspondence and the offer, purchase order, and invoice memorializing the transaction. *See* Dkt. No. 49. Defendants assert that the documents are inadmissible because they are not authenticated as business records and do not meet any hearsay exception.

First, the exhibits do not need to be authenticated at the summary judgment stage of the proceedings.

"'At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.'" *Tompkins v. Amarillo College,* No. 2:19-cv-27-Z-BR, 2021 WL 9880852, at *1 (N.D. Tex. Feb. 5, 2021) (quoting *Maurer v. Indep. Town*, 870 F.3d 530, 534 (5th Cir. 2017)). It only need be "presented in a form that would be admissible in evidence." *Id.* (quoting *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting FED. R. CIV. P. 56(c)(2)).

"This flexibility allows the court to consider the evidence that would likely be admitted at trial – as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant–without imposing on parties the time and expense it takes to authenticate everything in the record." *Id.* (quoting *Maurer,* 870 F.3d at 384).

Defendants do not assert that any of these documents cannot be presented in a form that would be admissible at trial – instead, Defendants only assert that they have not yet been authenticated at the summary judgment stage.

Second, some of the documents to which Defendants object are included in evidence that Defendants themselves submitted in support of their own motion for summary judgment or that Defendants produced during discovery. And an objecting party cannot object to evidence when it relied on the same evidence. *See Pacheco v. St. Mary's Univ.*, No. 15-cv-1131 (RCL), 2017 WL 2670758, at *8 (S.D. Tex. June 20, 2017).

Third, Defendants object to emails that they produced during discovery. But they cannot object to the authenticity of their own emails. *See BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, Civ. A. H-13-3046, 2016 WL 1387907 (S.D. Tex. Apr. 8, 2016) (holding documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent).

The authenticity objections are overruled.

### 2.    Hearsay Objections [Dkt. No. 49]

Defendants object that three of the documents contain inadmissible hearsay.

They object to Exhibit J, an email from Elle Logistics to Pem-Air, because it references communications between Elle Logistics and a "transport company," Dkt. No. 37 at 47; Exhibit L, an email from Juan Robles with Pem-Air to Gupta, which states "[j]ust got off with the transport company and they advise that Mehmet told them that the shipment will not be ready" for pick up, *id*. at 57; and Exhibit M, an email from Elle

Logistics to Juan Robles with Pem-Air, that states "[s]poke with Mehmet, the parts did not arrive, we are going to reschedule," *id.* at 63.

Pem-Air asserts that these statements are not hearsay because they are not being offered for the truth of the matter but rather only to show that Pem-Air was advised that there was a delay. *See Dugas v. Ace Am. Ins. Co.*, 468 F. Supp. 3d 769, 775 (W.D. La. 2020) (holding that evidence offered to prove there were differing statements is not hearsay because the evidence is not offered for the truth of each statement).

Pem-Air explains that the emails included in its summary judgment evidence show all correspondence between the parties as all communications for the entire transaction were by email. Pem-Air also states that the emails show that Defendants had multiple correspondence with Simon Benford and Gene Mashlan during the repeated delivery delays.

Because hearsay evidence is evidence used to prove the truth of the matter asserted, *see* FED. R. EVID. 801, how the statement is used is determinative of whether it is hearsay.

The Court is persuaded that the emails are not hearsay in the manner in which Pem-Air uses them.

And, again, Defendants' own summary judgment evidence includes the statement references in the emails about delays. See Dkt. No. 50 at 4.

Defendants' hearsay objections are overruled.

B.     Objections to Affidavits and Declarations

Federal Rule of Civil Procedure 56(c) requires that an affidavit or declaration

used to support or oppose a motion for summary judgment (1) be made on personal knowledge, (2) set forth facts that would be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify to the matters stated. *See* FED. R. CIV. P. 56(c)(4).

Declarations asserting personal knowledge must include enough factual support to show that the declarant possesses that knowledge. *See Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2017). A statement is not within a declarant's personal knowledge if the statement is based on information and belief. *See Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015).

Conclusory declarations cannot create fact issues to defeat a summary judgment. *See First Colony Life Ins. Co. v. Sanford,* 555 F.3d 177, 181 (5th Cir. 2009); *see also Amie,* 253 F. App'x at 451 (summary assertions or conclusory allegations in a declaration are simply not enough proof to raise a genuine issue of material fact). "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.").

Hearsay in an affidavit or declaration used to support or oppose a summary judgment motion is inadmissible. *See Floyd's v. Chilly's L.L.C. of Alabama*, Civil Action No. 15-00544-BAJ-RLB, 2017 WL 1455024, at *4 (M.D. La. Apr. 21, 2017) (citing *Fowler*

*v. Smith*, 63 F.3d 124, 126 (5th Cir. 1995).

> 1.  Objections to Affidavit of Simon Bedford [Dkt. No. 49]

Simon Bedford is the General Manager of Pem-Air Turbine Engine Services. *See* Dkt. No. 37 at 3 ¶3. Defendants object to following statements in Bedford's Affidavit [Dkt. No. 37 at 3-10] because they are not based on personal knowledge or are conclusory:

- Storage fees accrued for each day the Aircraft remained in the United Kingdom, which PATES was liable to pay. *Id.* at ¶7.

- On May 7, 2020, Elle advised PATES that the materials would arrive later that day, but would not be available for pick up until Monday, May 11, 2020. *Id.* ¶34.

- Elle picked up the Materials on May 11, 2020 and delivered them to eCube in the United Kingdom on May 18, 2020. *Id.* ¶35.

- On May 18, 2020, eCube notified PATES that the delivered Materials included two incomplete engine stands, thus rending them unusable. *Id.* ¶37.

- On May 19, 2020, PATES, through its representative Mr. Mashlan, advised Mr. Gupta that Preneet also failed to include all components for the bootstrap kit. *Id.* ¶39.

- eCube could not begin removal of the Engines because the bootstrap kit was missing essential components that rendered it unusable. *Id.* ¶40.

The Court may infer Benford has personal knowledge of Pem-Air's business and communications, including the expenses Pem-Air incurred, based on his position as general manager and his involvement in the project.

As to paragraphs 35, 37, and 40, Benford need not be an employee of Elle or eCube to have personal knowledge of these matter, and he was copied on emails between Elle and eCube concerning these statements. *See id.* at 62-28, 89-90.

The Court also notes that Defendants included the statement in paragraph 35 of Benford's Declaration that they object to in Gupta's Declaration in support of its response to Pem-Air's motion for summary judgment. See Dkt. No. 51 at ¶22.

Objections to paragraphs 7, 34, 35, 37, 39, and 40 in Benford's Affidavit are overruled.

Defendants also object to following statements in Bedford's Affidavit [Dkt. No. 37 at 3-10]:

- Mr. Mashlan sent pictures to Mr. Gupta, who conceded that the bootstrap kit was missing components, including a bracket. *Id.* at ¶41.

- On May 21 and 22, 2020, Mr. Mashlan asked Mr. Gupta to confirm all missing parts from the bootstrap kit are being made with the shipment of the missing engine stand parts and to provide shipping details for the Missing Materials. *Id.* ¶47.

- From May 21, to 26, 2020, Mr. Mashlan made multiple attempts to obtain the shipping information from Mr. Gupta to no avail. *Id.* ¶50.

- Mr. Mashlan then continued to attempt to obtain tracking information from Mr. Gupta on behalf of PATES. *Id.* ¶53.

- From June 1-5, 2020, Mr. Mashlan continued to contact Mr. Gupta requesting the tracking information for the Missing Materials, again to no avail. *Id.* ¶55.

- However, Mr. Gupta and Preneet never shipped the Missing Materials to PATES. *Id.* ¶56.

- Mr. Gupta and Preneet ceased all communications with PATES from June 5, 2020. *Id.* ¶60.

As Pem-Air's general manager, and based on his involvement in the project, Benford has personal knowledge of the actions of Mashlan, Pem-Air's agent in the United Kingdom, who copied Pem-Air on all his correspondence with Defendants.

Bedford also has personal knowledge concerning shipment of the materials and when correspondence between Gupta, Preneet, and Defendants ceased.

Objections to paragraphs 41, 47, 53, 55, 56, and 60 in Benford's Affidavit are overruled.

And Defendants object to following statements in Bedford's Affidavit [Dkt. No. 37 at 3-10]:

- … Mr. Gupta refused to ship the Materials to PEM-AIR. *Id.* at ¶ 33.

- Mr. Gupta abandoned PATES and ignored any further correspondence from Mr. Mashlan or PATES regarding the Materials and Missing Materials. *Id.* ¶59.

Benford has not shown that he has personal knowledge of Gupta's internal decision making, and statements that Gupta "refused" or abandoned" are conclusory.

Objections to paragraphs 33 and 59 are sustained to the extent that they make conclusions about Gupta's state of mind.

Defendants also raise hearsay objections to paragraphs 7, 45, and 47 of Benford's Affidavit, but Defendants do not address any statement by a third party offered for the truth of the matter asserted. These statements are based on Benford's personal knowledge and are admissible.

Defendants' objections to Benford's Affidavit [Dkt. No. 49 at 4-6] are sustained in part and overruled in part.

　　　　　2.　　Objections to Declaration of Gene Mashlan [Dkt. No. 49]

Gene Mashlan was Pem-Air's agent and representative to manage the removal of the airline engines in the United Kingdom. *See* Dkt. No. 37 at 12 ¶¶2, 3. Defendants

object to the following statements in the Mashlan's Declaration [Dkt. No. 37 at 12-16].

*See* Dkt. No. 49 at 5-8.

- However, when the Materials arrived in the United Kingdom on May 18, 2020, several items were missing from the Materials. *Id*. ¶11.

- On May 19, 2020, I learned that not only were engine stands missing components, but the bootstrap kit was also incomplete. *Id*. ¶16.

The Court may infer that Mashlan has personal knowledge about aircraft engines based on his role as Pem-Air's agent and representative to manage the removal of the aircraft engines and his participation in the events on which this lawsuit is based.

And, as the manager of the project, the Court can infer that Mashlan could determine whether certain components were allegedly missing.

Objections to paragraphs 11 and 16 in Mashlan's Declaration are overruled.

Defendants also object to the following statements in the Mashlan's Declaration [Dkt. No. 37 at 12-16]:

- eCube is a company located in the United Kingdom that specializes in recycling aircraft parts. *Id*. ¶4.

- On May 18, 2020, eCube received the Materials and learned the engine stands were missing several pieces, including bootstrap points, forward engine attachment arms or brackets, and bolts for attaching the rear attachment arms. *Id*. ¶12.

- Mr. Gupta responded that he would have the factory ship the missing parts directly to eCube and that he would send eCube a parts list, but he never did so. *Id*. ¶14.

- eCube could not begin removal of the Engines because the Materials were missing essential components (the "Missing Materials") that rendered the Materials unusable. *Id*. ¶20.

- PATES and eCube received the Materials on May 18, 2020 and waited for Mr.

Gupta to ship the Missing Materials based on his representations, but Mr. Gupta and Preneet never shipped the Missing Materials despite these representations. Id. ¶33.

- Mr. Gupta and Preneet ceased all communications with eCube from June 5, 2020. *Id*. ¶35.

- At no point in time did Mr. Gupta ever request eCube to return the incomplete bootstrap kit to Preneet. *Id*. ¶36.

Mashlan has personal knowledge because he worked as a liaison between Pem-Air and eCube in his role as project manager. *See id*. ¶3. He did not need to work for eCube, as Defendants contend, to have personal knowledge about eCube's operations or communications concerning the project.

Objections to paragraphs 4, 12, 14, 20, 33, 35, and 36 in Mashlan's Declaration are overruled.

And Defendants object to the following statements in the Mashlan's Declaration [Dkt. No. 37 at 12-16]:

- After several delays, Preneet did not have the Materials ready for shipment until in or about May 2020. *Id*. ¶9.

- Mr. Gupta responded that he would have the factory ship the missing parts directly to eCube and that he would send eCube a parts list, but he never did so. *Id*. ¶14.

- On May 27, 2020, Mr. Gupta represented that DHL returned the Missing Materials to their original location because all the individual pieces inside the shipping box needed to be separately wrapped in sealed bags and treated with ultraviolet light. *Id*. ¶27.

- Mr. Gupta and Preneet ceased all communications with eCube from June 5, 2020. *Id*. ¶35.

Pem-Air had personal knowledge as Pem-Air's project manager of the Defendants'

-13-

delays in making the Materials ready for shipment.

Objections to paragraphs 9, 14, 27, and 35 in Mashlan's Declaration are overruled.

Defendants also object to the following statements in the Mashlan's Declaration [Dkt. No. 37 at 12-16]:

- … Mr. Gupta conceded that the bootstrap kit was missing components. *Id*. ¶19.

- I also tried calling Mr. Gupta several times to confirm shipment of the Missing Materials, but he refused to pick up the phone. *Id*. ¶22.

- On May 23, 2020, Mr. Gupta represented that DHL picked up the Missing Materials and that everything was en route to the United Kingdom. *Id*. ¶24.

- … but Mr. Gupta failed to provide this information to me. *Id*. ¶25.

- I also called Mr. Gupta multiple times to obtain the Missing materials shipping information, but he refused to answer the phone. *Id*. ¶26.

- Mr. Gupta abandoned shipping the Missing Materials to the United Kingdom and ignored any further correspondence from eCube or PATES regarding the Materials and Missing Materials. *Id*. ¶34.

- Mr. Gupta and Preneet ceased all communications with eCube from June 5, 2020. *Id*. ¶35.

- At no point in time did Mr. Gupta ever request eCube to return the incomplete bootstrap kit to Preneet. *Id*. ¶36.

Defendants object that Mashlan lacks personal knowledge of Gupta's actions and state of mind. But, the Court may infer that, as project manager, Mashlan had personal knowledge of Gupta's acknowledgement that there were Missing Materials and whether he received requested information from Gupta.

The Court may also infer from Mashlan's role as liaison with eCube that he had

personal knowledge of the breakdown of communication between Gupta and eCube and whether Gupta requested eCube return the bootstrap kit Preneet leased to Pem-Air.

The objections to "he refused to pick up the phone" in paragraphs 22 and 26 and to paragraph 34 in Mashlan's Declaration are sustained, but objections to the remainder of those paragraphs are overruled. Objections to paragraphs 19, 24, 25, 35, and 36 are overruled.

And Defendants object to the following statements in the Mashlan's Declaration [Dkt. No. 37 at 12-16]:

- On May 23, 2020, Mr. Gupta represented that DHL picked up the Missing Materials and that everything was en route to the United Kingdom. *Id*. ¶24.

- On May 28, 2020, Mr. Gupta represented that the Missing Materials were being prepared to ship that afternoon. *Id*. ¶28.

- On June 3, 2020, Mr. Gupta represented that the Missing Materials were picked up late on June 1, 2020 and that he would forward the tracking information once he obtained it. *Id*. ¶31.

Defendants object that Mashlan fails to demonstrate how he has personal knowledge of certain Gupta representations. But the Court may infer Mashlan had personal knowledge in his role as project manager.

Defendants also object to the following statements in the Mashlan's Declaration [Dkt. No. 37 at 12-16]:

- On May 28, 2020, Mr. Gupta represented that the Missing Materials were being prepared to ship that afternoon. *Id*. ¶28.

- On June 3, 2020, Mr. Gupta represented that the Missing Materials were picked up late on June 1, 2020 and that he would forward the tracking information once he obtained it. *Id*. ¶31.

Defendants object that these paragraphs are hearsay, arguing that they offered to prove the truth of the matter. Pem-Air responds that they are offered to show what Gupta told Pem-Air and not for the truth of the matter concerning shipment of the Missing Materials.

The hearsay objections to paragraphs 28 and 31 of Mashlan's Declaration are sustained to the extent that they are offered to prove the truth of the matter but overruled insofar are they are admissible for a different reason.

3.  Objections to Declaration of Navyug Gupta [Dkt. Nos. 55, 65]

Pem-Air objects to statements in the Declaration of Navyug Gupta dated June 13, 2023. Defendants filed the same Gupta Declaration in response to Pem-Air's motion for summary judgment and in support of Defendants' motion for summary judgment. *See* Dkt. No. 51 at 1-8; Dkt. No. 61 at 1-8. And Pem-Air makes the same objections to both filings of the Gupta Declaration. See Dkt. Nos. 55, 72.

Navyug Gupta is the President and sole shareholder of Preneet Holdings, Inc., Dkt. No. 51 at 1 ¶1.

Personal knowledge means that the affiant "must have had an opportunity to observe, and must have actually observed the fact." *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015) (quoting Fed. R. Evid. 602 advisory committee's note) A statement is not within a declarant's personal knowledge if the statement is based on information and belief. *See id.*

Pem-Air seeks to strike the following statements in Gupta's Declaration because they are not based on personal knowledge, are vague and conclusory, and cannot be

presented in a form admissible at trial:

- I based these statements on information that I obtained from the manufacturer, MTS, and I believed that the statements were accurate when I made them. I had no reason to believe otherwise and would not have made such representations had I not believed them to be true. *Id.* at 3 ¶8.

- However, in the spring of 2020, and unbeknownst to me, MTS was already experiencing interruptions in its operations due to COVID. *Id.* at 4 ¶12.

- After that, and until I was served with this lawsuit, I received no notice from Pem-Air that the shipment had not arrived. In fact, based on the pleadings, I believe the shipment did arrive. But since the parts were shipped under Pem-Air's DHL account, only PEM-AIR can obtain the shipping and deliver information from DHL. *Id.* at 6 ¶27.

Pem-Air argues that paragraphs 8, 12, and part of 27 are inadmissible because Gupta admits he did not have personal knowledge.

The objections are sustained because a statement based on information or belief is inadmissible. Likewise, Gupta's deductions from the Complaint are not summary judgment evidence.

Pem-Air also seeks to strike the following statements in Gupta's Declaration:

- After the aforementioned conversation with Pem-Air, I learned that the equipment could not be shipped with a conventional enclosed trailer or a regular flat-bed truck. It required the use of a step-deck trailer, a two-tiered trailer. At this point I learned that a trailer would not be available until May 5. *Id.* at 4 ¶14.

- Under normal circumstances, when MTS provides a bootstrap kit for sale through Preneet, the ultimate buyer may opt to purchase the kit without a dynamometer for any number of reasons. They may have their own dynamometers on hand, for example. *Id.* at 5 ¶17.

Pem-Air argues these statements are too vague, conclusory, and speculative to be admissible because Gupta fails to provide or refer to any specific facts, including how he obtained the information, and the Court sustains those objections.

-17-

Pem-Air also objects that use of the words "under normal circumstances" in paragraph 8 is unclear. But that is drawing too fine a line. And Gupta does have personal knowledge about his normal practices. The objection to the phrase "under normal circumstances" in paragraph 17 is overruled. Otherwise, the objections to paragraphs 14 and 17 are sustained.

And Pem-Air seeks to strike the following statements in Gupta's Declaration:

- After the aforementioned conversation with Pem-Air, I learned that the equipment could not be shipped with a conventional enclosed trailer or a regular flat-bed truck. It required the use of a step-deck trailer, a two-tiered trailer. At this point I learned that a trailer would not be available until May 5. *Id*. at 4 ¶14.

- Preneet did not learn well into May that MTS would not lease the bootstrap kit without the dynamometers, due to the potential liability should PEM-AIR or its technician attempt to move an engine without using a dynamometer. Upon investigation I specifically learned that Preneet could not obtain the leased equipment from MTS for use by PEM-AIR unless the dynamometer was included. If it was suppled and PEM-AIR opted not to use it, at least MTS has provided the complete kit. Id. at 5 ¶19.

- As Preneet had already quoted a price to lease the kit for a month without the dynamometers, however, MTS agreed to provide the equipment at no additional charge. But MTS insisted the dynamometer be included in the shipment. Id. at 5 ¶20.

- Not long thereafter, I learned the dynamometer did not pass a quality assurance test by MTS, and that there would be a delay while MTS ordered new dynamometers. It was my understanding that the new dynamometers would arrive on May 7, and passed along this information just as it was given to me. I believed all of the information regarding delays, including the delay involving the dynamometer to be accurate and true at the time I passed along the information to PEM-AIR. *Id*. at 5-6 ¶21.

- I assured PEM-AIR that I would ask MTS to ship the crate directly to PEM-AIR. MTS obtained PEM-AIR's DHL account number and arranged for the carrier to pick up the crate. DHL accepted the crate for transport on May 23, 2020. *Id*. at 6 ¶24.

- On May 27, 2020, DHL returned the parts to MTS. Apparently, under its new COVID protocols that parts each needed to be sealed in separate bags and the entire shipment needed to be treated with ultraviolet light to ensure the safety of the handlers. *Id.* at 6 ¶25.

- On or about June 3, 2020, I learned that DHL had picked up the repackaged, UV treated parts. I notified PEM-AIR that the shipment was on its way. *Id.* at 6 ¶26.

Gupta fails to provide facts to show how he learned this information or otherwise

has personal knowledge, and Pem-Air's objections to these statements are sustained.

Pem-Air also seeks to strike the following statements in Gupta's Declaration:

- As a practical matter, I never guarantee delivery or shipping on a date certain when I arrange, on behalf of Preneet, for the sale of ground services equipment such as bootstrap kit. There are too many variables that can interfere and prevent timely pick-ups and deliveries. Preneet has no control over whether a supplier like MTS is timely in preparing materials for shipping, and no control over whether the buyer's choice of transport remains on schedule. *Id.* at 3 ¶10.

- After that, and until I was served with this lawsuit, I received no notice from PEM-AIR that the shipment had not arrived. In fact, based on the pleadings, I believe the shipment did arrive. But since the parts were shipped under PEM-AIR' DHL account, only PEM-AIR can obtain the shipping and deliver information from DHL. *Id.* at 6 ¶27.

- As a result of PEM-AIR's failure to timely return the kit, Preneet has become indebted to MTS for the lease of the kit, and has lost the opportunity to resell the kit as used to recoup its investment. *Id.* at 7 ¶29.

Dkt. No. 55 at 3-9.

Gupta has personal knowledge of his usual practices in equipment sales and

leasing and whether he was notified that the shipment of Missing Materials had not

arrived. The objections to paragraph 10 and the first sentence of paragraph 27 are

overruled.

But the remainder of paragraph 27 and paragraph 29 are conclusory, and Gupta

does not provide any factual detail to support his conclusions, and Pem-Air's objections to these statements are sustained.

4.      Objections to Declaration of Mehmet Tumba [Dkt. Nos. 55, 65]

Pem-Air objects to statements in the Declaration of Mehmet Tumba dated June 13, 2023. Defendants filed the same Tumba Declaration in response to Pem-Air's motion for summary judgment and in support of their motion for summary judgment. *See* Dkt. No. 51 at 13-16; Dkt. No. 61 at 13-16. And Pem-Air makes the same objections to both filings of the Tumba Declaration. *See* Dkt. Nos. 55, 71.

Mehmet Tumba is the owner of MTS Ground Equipment, LLC. *See* Dkt. No. 51 at 13 ¶1.

Pem-Air objects to statements in the Declaration of Mehmet Tumba dated June 13, 2023 [Dkt. No. 51 at 13-16] because they are not based on personal knowledge, are vague and conclusory, and cannot be presented in a form admissible at trial.

Pem-Air objects to the following statements:

- The COVID-19 pandemic took a large toll on the operation of MTS. Several employees contracted the virus while the materials reference above were being prepared for shipping. Each employee who tested positive for COVID-19 necessitated a shut-down of the whole factory for cleaning and disinfecting. Significantly, the work force at MTS was diminished with the diagnosis of each new case. At all times during the pendency of these actions the COVID-19 pandemic was ongoing and creating ongoing issues worldwide, which directly affected the ability of MTS to timely procure equipment and provide it for shipment. *Id*. at 13-14 ¶3.

- At the time of that exchange, this type of trailer was not available until at least Tuesday, May 5, 2020. *Id*. at 14 ¶5.

- Upon inspection of the equipment during a quality assurance test on May 5, 2020, it came to my attention that the dynamometers could not pass the test. In

order to ensure the bootstrap kit was complete, MTS ordered a new dynamometer, which was not slated to arrive until May 7, 2020. Normally, a dynamometer that failed a quality assurance test could be replaced quickly, but because the supply chain issued then being experienced by MTS due to the COVID-19 pandemic, it took several days to replace…Whether due to an error by PEM-AIR's shipper or due to the decrease in my workforce, that separate crate was left behind. *Id*. at 14-15 ¶6.

- On May 27, 2020, DHL returned the create to MTS. Due to COVID-19 pandemic restrictions, DHL required MTS to wrap each individual piece in separate, sealed bags and treat each bag with ultraviolet light. This process was required before DHL would return to pick the create up and complete the shipment. DHL picked up the newly packaged and treated create late on June 1, 2020. *Id*. at 15 ¶7.

- I understand that six months later, before Preneet could inquire about PEM-AIR's intentions regarding the leased kit, PEM-AIR filed this suit. This was the first notice that Preneet or MTS had of any issue with the shipments. Having heard nothing since the final shipment in June, both Preneet and MTS had been left with the impression that the missing parts arrived in early June and project proceeded. *Id*. at 15 ¶10.

Dkt. No. 55 at 9-12.

The objections to paragraphs 5 and 6 are sustained, and the objections to paragraphs 3, 7, and 10 are overruled.

### 5.    Motion to Amend Gupta and Tumba Declarations

Defendants filed Gupta's and Tumba's Declarations on June 13, 2023.

Gupta was deposed the next day, on June 14, 2023. *See* Dkt. No. 69-1 at 2.

Although the discovery deadline was July 7, 2023, the parties agreed to extend the deadline to depose MTS's corporate representative.

The dispositive motion deadline was July 21, 2023. *See* Dkt. No. 29.

Tumba was deposed as MTS's corporate representative on August 4, 2023. *See* Dkt. No. 69-2 at 2.

-21-

One week later, on August 11, 2023, Pem-Air filed objections to Tumba's Declaration as perjurious because his deposition testimony materially differed from statements in his declaration. *See* Dkt. No. 65 at 4-7.

Two days later, on August 13, 2023, Defendants filed a motion for leave to amend Gupta's and Tumba's declarations after the deadlines set in the Scheduling Order "to correct honest discrepancies and mistakes." *See* Dkt. No. 67. Defendants argue there is good cause to grant leave to amend the declarations under Federal Rule of Civil Procedure 16(b)(4).

MTS engaged Defendants' counsel to represent its corporate representative, Tumba, at the deposition According to Defendants, on August 1, 2023, while Tumba and counsel were preparing for his deposition, Tumba realized that certain statements in his and Gupta's declarations related to a different shipment for another Preneet customer in no way related to Pem-Air. *See id.* at 2-3. And Tumba also realized other alleged errors – one regarding terminology for a transportation trailer and the other involving his independent recollect of the date of the reshipment of the allegedly missing parts. *See id.* at 3.

"District courts must have the power to control their dockets by holding litigants to a schedule." *Shepherd v. City of Shreveport*, 920 F.3d 278, 288 (5th Cir. 2019) (citing *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997)). Indeed, district court are empowered "to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Reliance Ins. Co.*, 110 F.3d at 258 (citing *Turnage v. Gen. Ele. Co.*, 953 F.2d 206, 208-09 (5th Cir. 1992). To facilitate

-22-

this, "[t]he Federal Rules of Civil Procedure state that a pretrial schedule may be modified 'only for good cause.'" *Shepherd*, 920 F.3d at 287 (quoting Fed. R. Civ. P. 16(b)(4); *cf. Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979) ("[W]e ascribe to the trial court a broad discretion to preserve the integrity and purpose of the pretrial order...." (citation omitted)).

    To meet the good cause standard, parties must show that, despite their diligence, they could not reasonably have met a deadline (or deadlines) in the scheduling order. *Se S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003); *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) ("To show good cause, the party seeking to modify the scheduling order has the burden of showing that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." (internal quotation marks omitted)); *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1986) ("This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." (citations and internal quotation marks omitted)); *cf., e.g., Puig v. Citibank, N.A.*, 514 F. App'x 483, 488 (5th Cir. 2013) (per curiam) ("[T]o determine whether the district court abused its discretion in finding no good cause to modify its scheduling order, we look to the [party's] diligence in [obtaining compliance] within the scheduling order's timeline.").

    In exercising the authority to determine whether to modify a scheduling order for good cause under Federal Rule of Civil Procedure 16(b)(4), the "four relevant factors" are: "'(1) the explanation for the failure to timely comply with the scheduling order; (2)

the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice.'" *Squyers*, 782 F.3d at 237 (quoting *Meaux Surface Protection, Inc. v. Fogelman*, 607 F.3d 161, 167 (5th Cir. 2010); brackets omitted).

While "[t]he court considers the four factors holistically and 'does not mechanically count the number of factors that favor each side.'" *Harrison v. Wells Fargo Bank,* No. 3:13-cv-4682-D, 2016 WL 3612124, at *2 (N.D. Tex. July 6, 2016) (quoting *EEOC v. Serv. Temps, Inc.*, No. 3:08-cv-1552-D, 2009 WL 394863, at *3 (N.D. Tex. Oct. 13, 2009)), "[t]he absence of prejudice to the nonmovant and inadvertence of the party seeking the modification are insufficient to demonstrate 'good cause,'" *Barnes v. Sanchez*, No. 3:07-1184-M, 2010 WL 5027040, at *1 (N.D. Tex. Dec. 2, 2010) (footnote omitted).

> a.   Explanation for failure to comply with scheduling order

Defendants have failed to explain why they failed to provide the evidence in their amended declarations before the Court's deadlines and before the parties completed discovery. Their only explanation is that Tumba and Gupta reviewed their declarations on August 1, 2023 – after the close of discovery and after the deadline for filing motions – and believe that the additional crate left behind was from another shipment.

But there is no testimony or evidence supporting the new assertions that Tumba or Gupta confused two shipments or to support changing testimony regarding the truck, DHL, and ultraviolet light.

Nor do Defendants explain why it was counsel for third-party MTS and its

corporate representative, not Defendants themselves, who allegedly discovered the alleged mistakes in the June 13, 2023 declarations. Defendants do not identify what evidence Tumba reviewed in preparation for his deposition, whether that evidence was available before Gupta and Tumba signed the June 13, 2023 declarations, or why these amendments could not have been sought before the discovery deadline.

Defendants also fail to explain why, if they were aware of the alleged inaccuracies in the declarations on August 1, 2023 (three days before Tumba's deposition), they failed to notify Pem-Air until after Tumba was deposed.

This factor weighs in favor of Pem-Air.

### b.   Importance of the modifications

Defendants contend that none of the statements that they want to amend are dispositive of the pending summary motions. *See* Dkt. No 67 at 6, 10, 11.

This factor weighs in favor of Pem-Air.

### c.   Potential prejudice in allowing modifications

Pem-Air will suffer prejudice based on Defendants' amended declarations. Discovery is complete, with Pem-Air having deposed both Gupta and Tumba. And the evidentiary summary judgment filings are also complete. Both sides have presented their evidence supporting their summary judgment motions and have filed all responses.

Pem-Air's claims are based on ordering materials but never receiving the complete materials. See Dkt. No. 36. In response, Defendants acknowledged that there was a missing box from the shipment but argued that MTS used Pem-Air's DHL

account to ship the missing materials. See Dkt. No. 50.

Now Defendants want to change Gupta and Tumba's testimony to say that there was no missing box, that MTS did ship a second box with alleged missing partis, and that MTS did not coordinate the shipment with DHL.

This materially changes several matters in this proceeding. First, originally there was no dispute that there were missing parts from the shipment. Now, the changed testimony attempts to create a dispute that there were no missing parts by saying that MTS prepared a new box with allegedly missing parts. Second, Defendants heavily relied on the fact that MTS shipped the second box with Pem-Air's DHL account number to argue that Pem-Air received the second box.

This entire argument is changed based on the amended declarations.

Pem-Air would be prejudiced by granting leave to file the amended declarations because it is not able to re-depose Gupta on the changes in his testimony or to file any response in the summary judgment filings addressing the changed testimony.

This factor weighs in favor of Pem-Air.

> d.   Availability of a continuance to cure such prejudice

If the scheduling order were modified and Defendants were granted leave to file the amended declarations, Pem-Air would be required to conduct additional discovery and file new papers addressing the change in Gupta's and Tumba's testimony.

The Court has granted several extensions of time and vacated the trial date. Granting another continuance would unnecessarily further delay the proceedings in this case.

This factor weighs in favor of Pem-Air.

Defendants' motion for leave to file amended declarations [Dkt. No. 67] is denied.

II.   Objections to summary judgment briefs

   A.   Objections to unsupported statements in the briefs

Pem-Air objects to statements in Defendants' summary judgment briefs that are not supported by citation to supporting evidence in the record. *See* Dkt. Nos. 55, 65.

In the summary judgment context, a party must support assertions that a fact exists by "citing to particular parts of materials in the record," FED. R. CIV. P. 56(c)(1), and "the court need consider only the cited materials," FED. R. CIV. P. 56(c)(3).

"When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Id.* (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations omitted).

"Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted)).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted); *see also Corbin v. Southwest Airlines, Inc.*, Civil Action No. H-17-2813, 2013 WL 4901155, at *5 (S.D. Tex. Oct. 9, 2018) (holding statements that "merely describe 'logical inferences'" a party wants the court to draw from the "facts contained in the evidentiary record" do not support summary judgment).

### 1.   Objections to Defendants' Response Brief [Dkt. No. 55]

Pem-Air objects to the following statements in Defendants' Response Brief [Dkt. No. 50] because they do not cite supporting evidence in the summary judgment record. *See* Dkt. No. 55 at 2-3.

- Additionally, in mid-spring of 2020, the world was not functioning under normal circumstances. While Preneet continued to relay information to its customers regarding expected shipping dates, shipping began to slip as Covid lockdowns commenced worldwide and shipping distribution channels were affected, in unprecedent and unpredictable ways. Dkt. No. 50 at 8.

- Rather, they were attempts to keep a customer apprised of anticipated delivery dates, at the beginning of the COVID pandemic as numerous contingencies were arising worldwide, which the parties could not anticipate. *Id*. at 19

- Here, DHL, Pem-Air's shipper, took shipment of the missing parts. However, apparently due to the unanticipated global pandemic, DHL returned the shipment and required that the shipper treat the parts with ultraviolet light and wrap the parts individually. There was a contributing, and unavoidable fact which caused the delay, among other Covid-related factors, as set forth in the declarations of Navyug Gupta and Mehmet Tumba. Even if time were of the essence and/or specific delivery date had been agreed by the parties, the UCC would bar Pem-Air's motion for judgment on its express warranty claims due to the unexpected contingencies which the parties did not anticipate and the non-occurrence of which (that there would not be a global pandemic affecting supply chains and shipments) was a basic assumption of the parties. *Id*. at 19-20.

Defendants seem to ask the Court to take judicial notice of unknown facts relating to COVID-19. And, although the Court may take judicial notice of the significant impact of COVID-19 on travel, transport, and air freight, Defendants fail to identify specific summary judgment evidence, as opposed to conclusory statements, concerning its impact on the transaction at the heart of this lawsuit.

Pem-Air also objects to the following statements in Defendants' Response Brief [Dkt. No. 50]:

- Pem-Air acknowledges receipt of the engine stands and bootstrap kit. Pem-Air still possesses the equipment it purchased from MTS and the equipment it leased from MTS in 2020. *Id.* at 14.

- MTS, the manufacturer for whom Preneed operates as a distributor, shipped the remaining parts on June 1, 2023, using Pem-Air's shipper. After MTS shipped the parts using Pem-Air's DHL account, neither MTS nor Preneet heard from Pem-Air until Pem-Air filed this lawsuit. Because Pem-Air acted inconsistently with Preneet's ownership rights by keeping the equipment it purchased and/or leased… *Id.* at 15.

- Pem-Air's requested engine stands and bootstraps to be used for the purpose for which the manufacturer designed them… But here, there is no dispute regarding how Plaintiff intended to use the equipment, and that use was exactly as the manufacturer intended. *Id.* at 22.

- Pem-Air still possess and controls the bootstrap kit, but Pem-Air paid only the original 30-day lease amount of $6000. *Id.* at 29.

Defendants fail to cite to record evidence to support these statements.

The objections to the statements above are sustained.

### 2.   Objections to Defendants' Summary Judgment Brief [65]

Pem-Air objects to the following statements in the brief in support of Defendants' motion for summary judgment because they do are not supported by citations to the summary judgment record. *See* Dkt. No. 65 at 2-3.

- Additionally, in mid-spring of 2020, the COVID-19 pandemic began interfering with travel and shipment schedules worldwide. *Id.* at 6.

- PEM-AIR never rejected the materials, and in fact still possesses the merchandise Preneet shipped. *Id.* at 11.

- PEM-AIR acknowledges receipt of the engine stands and bootstrap kit. PEM-AIR still possess the equipment it purchased from MTS and the equipment it leased from MTS in 2020. *Id.* at 12.

- MTS, the manufacturer for whom Preneet operates as a distributor, shipped the remaining parts on June 1, 2023 using PEM-AIR shipper. After MTS sjo[[ed the parts using PEM-AIR' DHL account, neither MTS nor Preneet ever heard from PEM-AIR again, until PEM-AIR filed this lawsuit. Again, the shipper was PEM-AIR's, and not Preneet's. *Id.* at 13.

- As the terms between PEM-AIR and Preneet are set forth in writing–writing that was intended by the parties as a final expression of their agreement–the agreed upon terms cannot be contradicted by evidence of prior or contemporaneous agreement. *Id.* at 14-15.

- PEM-AIR requested engine stands and bootstraps to be used for the purpose for which the manufacturer designed them…But here, there is no question or dispute regarding how Plaintiff intended to the equipment, and that use was exactly as the manufacturer intended. *Id.* at 18.

- Here, PEM-AIR and Preneet entered a valid contract for the lease of a bootstrap kit and PEM-AIR breached its obligations under the agreement by failing to timely return the bootstrap kit and to pay ongoing rental fees. PEM-AIR retained the leased bootstrap kit beyond the original 30-day lease. PEM-AIR still possess and controls the bootstrap kit, but PEM-AIR paid only the original 30-day lease amount of $6000. *Id.* at 24.

The objections to these statements are sustained because Defendants fail to cite to supporting evidence in the record and, without such support, the statements are legal conclusions that do not support summary judgment.

B.   Objections to Defendants' Reply Brief [Dkt. No. 75]

After Pem-Air filed a response brief to Defendants' motion for summary

judgment, *see* Dkt. No. 66, Defendants filed a reply brief, *see* Dkt. No. 72, and an appendix of evidence in support of the reply brief, *see* Dkt. No. 73.

Defendants then cited to evidence in the reply appendix that is not included in the motion appendix.

In most circumstances, the Local Civil Rules on summary judgment do not permit a party to submit additional evidence with a reply brief as of right. *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 103 (N.D. Tex. 2001); N.D. Tex. Civ. R. 56.7.

For that reason, a summary judgment movant "may not file a reply brief appendix without first obtaining leave of court." *Dethrow,* 204 F.R.D. at 104. And leave of court is available only under limited circumstances "because the purpose of a reply brief is to rebut the nonmovant's response, not to introduce new evidence." *Id.*

Because Defendants did not seek leave of court to file the reply appendix, the evidence in the reply appendix cannot be offered to support Defendants' summary judgment. But evidence included in the motion appendix can be considered.

Pem-Air objects to the following statements in Defendants' Reply Brief [72] because they are not supported by citation to the summary judgment record:

- It is now known that, shortly after Mashlan sounded the alarm, Plaintiff began orchestrating a scheme to cover its increasing costs of the failed purchase of the 767 aircraft, from Preneet and Gupta, claiming damages for, among other things, an alleged eleven-day pickup delay, from Plaintiff's desired date of May 1 to May 12, the actual date of pick up. This eleven-day timeframe includes a 575-mile drive by Plaintiff's transport company from the MTS factory in Arkansas to IAH Airport in Houston, a cargo flight routed from Houston to Glasgow to London over two days, and finally another 160-mile drive from London Heathrow to a small airport located in South Wales, as well as a national holiday in the U.K. for

which eCube advised their office would be closed. *Id*. at 5.

- Plaintiff instructed its transportation company, Elle Logistics, to picked [sic] up the two CF6-80A engine stands and the bootstrap kit on its behalf from MTS's facility in Arkansas on May 12, 2020, and further instructed it drive the freight to Houston, TX for the eventual continued transport to the eCube location at St Athan airport in South Wales. *Id*. at 8.

- PEM-AIR further admits that it received the bootstrap kit. *Id*. at 9.

- Despite all this, PEM-AIR has yet to even run a report of shipments for the relevant time frame under their DHL account for almost 3 years now. *Id*. at 11.

Dkt. No. 75 at 2-3.

The Court agrees and sustains Pem-Air's objections the reply brief and reply appendix.

C.   Motion for Clarification [Dkt. No. 89]

After Defendants filed their Reply Brief, Pem-Air filed a motion for clarification, seeking to file a sur-reply to Defendants' reply brief. See Dkt. No. 89.

The Local Civil Rules do not permit filing a sur-reply without leave of Court. See N.D. TEX. CIV. R. 7.1(f). Sur-replies are highly disfavored and are permitted only in exceptional or extraordinary circumstances. *See Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001).

To meet its burden to show such circumstances exist, a party seeking leave to file a sur-reply must identify new issues, theories, or arguments that the movant raised for the first time in its reply brief or attempts to present new evidence at the reply stage. *See Weems v. Hodness*, No. 10-cv-1452, 2011 WL 2731263, at *1 (W.D. Loa. July 13, 2011) (citing *Lacher*, 147 F. Supp. 2d at 539-40); *Racetrac Petroleum, Inc. v. J.J.'s Fast*

*Stop, Inc.*, No. 3:01-cv-1397-P, 2003 WL 251318, at *8 (N.D. Tex. Feb. 3, 2003).

Because the Court has sustained Pem-Air's objections to the reply brief and reply appendix, there are no exceptional circumstances warranting a sur-reply.

And, so, the Court denies Pem-Air's request to file a sur-reply and denies the motion for clarification.

## Conclusion

Defendants' Motion for Leave to Amend the Unsworn Declarations of Navyug Gupta and Mehmet Tumba [Dkt. No. 67] and Plaintiff's Motion for Clarification [Dkt. No. 89] are denied.

The objections to summary judgment evidence raised in Dkt. Nos. 49, 55, 65, and 76 are sustained or overruled as set forth above.

SO ORDERED.

DATED: March 27, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-33-